# NOTE

| JULY 25, 2008 | OWINGS MILLS, | MARYLAND |
|---|---|---|
| [Date] | [City] | [State] |

2225 COPENHAFFER RD, DOVER, PA 17315-1839
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $107,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FLAGSTAR BANK, FSB, A FEDERALLY CHARTERED SAVINGS BANK.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1ST day of each month beginning on SEPTEMBER 1, 2008. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 1, 2038, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5151 CORPORATE DR
TROY, MI 48098-2639

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $702.91.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: WMK

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of     15     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _WMR_

- Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Wesley M Kunkel_____ (Seal)
WESLEY M. KUNKEL

PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB

BY: _____
JEAN R. GARVICK, SENIOR VICE PRESIDENT

BY: _____
JOHN P. JAFFECKI, FIRST VICE PRESIDENT

[Sign Original Only]

YORK COUNTY
ASSESSMENT OFFICE



0817395

RETURN TO:
CHASE TITLE
300 REDLAND CT., STE 205
OWINGS MILLS, MD 21117

PREPARED BY- DAVID R. BRESCHI, ESQ

APN #: 23-000-NG-0110
APN #:

——————— Space Above This Line For Recording Data] ———————

# MORTGAGE

MIN:

14P
3N

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated JULY 25, 2008, together with all Riders to this document.

**(B) "Borrower"** is WESLEY M KUNKEL, AND KATHY ANN KUNKEL, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY.

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue, Suite 101, Ocala, FL 34474 or P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.

**(D) "Lender"** is FLAGSTAR BANK, FSB.

Initials: WMK
K.a-K.

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
© 1999-2008 Online Documents, Inc.          **Page 1 of 13**
07-25-2008 13:45

Book 1981 Page 7913

Lender is a **FEDERALLY CHARTERED SAVINGS BANK** organized and existing under the
laws of **UNITED STATES OF AMERICA.** Lender's address is
**5151 CORPORATE DR, TROY, MI 48098-2639.**

**(E) "Note"** means the promissory note signed by Borrower and dated **JULY 25, 2008.**
The Note states that Borrower owes Lender ****\*ONE HUNDRED SEVEN THOUSAND AND NO/100
**************************************************\*Dollars (U.S. $107,000.00 )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt
in full not later than **AUGUST 1, 2038.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider           ☐ Biweekly Payment Rider
☐ V.A. Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to
debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated
teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds
paid by any third party (other than insurance proceeds paid under the coverages described in Section
5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part
of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as
to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default
on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under
the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As
used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed
in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related
mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether
or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _WMK_
_XA.V_

**PENNSYLVANIA**--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
© 1999-2008 Online Documents, Inc.          **Page 2 of 13**

07-25-2008 13:45

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the **COUNTY**
[Type of Recording Jurisdiction] of **YORK**                                    [Name of Recording Jurisdiction]:
**SFRD**
**APN #: 23-000-HG-0010**

which currently has the address of **2225 COPENHAFFER RD, DOVER,**

[Street] [City]

Pennsylvania          **17315-1839**          ("Property Address"):
                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such location as may be designated by Lender in accordance with the notice provisions in

Initials: _WMK_

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
© 1999-2008 Online Documents, Inc.                    **Page  3  of 13**

07-25-2008 13:45

BEING ALL THAT CERTAIN TRACT OF LAND AND IMPROVEMENTS ERECTED THEREON SITUATE IN CONEWAGO TOWNSHIP, YORK COUNTY, PENNSYLVANIA, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT LANDS NOW OR FORMERLY OF JOHN E. SMITH AND A PUBLIC ROAD AT A STONE; THENCE ALONG SAID LAST MENTIONED LANDS, NORTH 27-5/8 DEGREES EAST A DISTANCE OF 10.1 PERCHES TO A STONE AT LANDS NOW OR FORMERLY OF FRANCES HAKE AND SAMUEL AUCHEY; THENCE ALONG SAID LAST MENTIONED LANDS, SOUTH 68-1/4 DEGREES EAST, A DISTANCE OF 17.84 PERCHES TO AN IRON PIN AT LANDS NOW OR FORMERLY OF HARRY PEREZ; THENCE ALONG SAID LANDS SOUTH 11-1/2 DEGREES WEST A DISTANCE OF 10.31 PERCHES TO STONES; THENCE ALONG LANDS OF THE SAME SOUTH 19-1/2 DEGREES WEST, A DISTNACE OF 13.1 PERCHES TO STONES AT LANDS NOW OR FORMERLY OF CHARLES HAKE; THENCE NORTH ALONG LANDS LAST MENTIONED, 37-1/8 DEGREES WEST A DISTANCE OF 25.12 PERCHES TO STONES AND THE PLACE OF BEGINNING.

THE IMPROVEMENTS THEREON BEING KNOWN AS 2225 COPENHAFFER ROAD, DOVER, PA 17315.

**BEING** the same premises which WESLEY M. KUNKEL, EXECUTOR OF THE ESTATE OF JOHN E. KUNKEL, AKA JOHN E. KUNKEL, SR. by Deed dated September 10, 2004, and recorded September 13, 2004, in the Recorder of Deeds Office in and for the City of Dover, County of York, Pennsylvania, in Book 1676, Page 5153, granted and conveyed unto WESLEY M. KUNKEL & KATHY ANN KUNKEL, HIS WIFE, in fee.

Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Initials: _WMK_
_KaK._

07-25-2008 13:45

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees

Initials: _WMK_
_Ka.K._

imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent

Case 1:23-bk-01205-HWV    Doc 27-11    Filed 01/09/24    Entered 01/09/24 16:08:47
Desc  (loan documents)    Page 10 of 46

the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately

Initials: *W/M R*
            *Ka.K.*

designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Initials: _WMK_
_LU.X._

Case 1:23-bk-01205-HWV     Doc 27-11     Filed 01/09/24     Entered 01/09/24 16:08:47
Desc  (loan documents)     Page 12 of 46

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: _WMK_
_Va.K._

07-25-2008 13:45

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials: _WMR_
_KQR._

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Initials:

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

Initials: _WMK_
_ξ a .ζ._

07-25-2008 13:45

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Wesley M Kunkel_ (Seal)
WESLEY M. KUNKEL

_Kathy Ann Kunkel_ (Seal)
KATHY ANN KUNKEL

Commonwealth of ~~MARYLAND~~ *PENNSYLVANIA*
County of ~~BALTIMORE~~ *ADAMS York*

On this, the 25th day of _July_ 2008 before me, _____
COLLIN Mc. KERR _____, the undersigned officer, personally appeared
_WESLEY M. KUNKEL_
_KATHY ANN KUNKEL_ ,
known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

My commission expires: _____ _[signature]_

```
Commonwealth of Pennsylvania
NOTARIAL SEAL
COLLIN Mc. KERR, NOTARY PUBLIC
Hanover Borough, York County
My Commission Expires January 13, 2012
```

_PA NOTARY_
Title of Officer

Certificate of Residence

I, _____ COLLIN Mc. KERR
do hereby certify that the correct address of the within-named Mortgagee is 5151 CORPORATE DR, TROY, MI 48098-2639

Witness my hand this 27th day of _July 2008_ _[signature]_

```
Commonwealth of Pennsylvania
NOTARIAL SEAL
COLLIN M ... ... PUBLIC
Hanover ... ... County
My Commission ... January 13, 2012
```

Agent of Mortgagee

PENNSYLVANIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3039 1/01
© 1999-2008 Online Documents, Inc. **Page 13 of 13**

```
Commonwealth of Pennsylvania 07-25-2008 13:45
NOTARIAL SEAL
COLLIN Mc. KERR, NOTARY PUBLIC
Hanover Borough, York County
My Commission Expires January 13, 2012
```

*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*

**Instrument Number - 2008053654**
**Recorded On 8/21/2008 At 10:36:21 AM**
* **Instrument Type - MORTGAGE**
**Invoice Number - 786286**
* **Grantor - KUNKEL, WESLEY M**
* **Grantee - MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC**
**User - MAG**
* **Customer - CHASE TITLE INC**

**Book - 1981   Starting Page - 7913**
* **Total Pages - 15**

* **Received By:  MAIL**

* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $33.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $2.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $62.00 |

**PARCEL IDENTIFICATION NUMBER**
23000NG01100000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*
# PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**Book: 1981  Page: 7927**

McCabe Weisberg & Conway, P.C.
Suite 2080
123 South Broad Street
Philadelphia, PA 19109



YORK COUNTY
ASSESSMENT OFFICE

1000115

Record and Return To:
McCabe Weisberg & Conway, P.C.
Suite 2080
123 South Broad Street
Philadelphia, PA 19109
Attn: Evan Bane

### Assignment of Mortgage

For value received, the undersigned holder of a mortgage, Mortgage Electronic Registration Systems, Inc., as nominee for Flagstar Bank, FSB, its successors and assigns , whose address is P.O. Box 2026, Flint, Michigan 48501-2026, grants, sells, assigns, transfers and conveys without warranties and without recourse, unto Flagstar Bank, FSB, whose address is 5151 Corporate Drive, Troy, Michigan 48098-2639, said mortgage having been executed by Wesley M. Kunkel and Kathy Ann Kunkel with a secure payment of $107,000.00, recorded in Book Number: 1981, Page: 7913 of the Recorder of Deeds for York County, Commonwealth of Pennsylvania and recorded on August 21, 2008, and all rights accrued or to accrue under said Mortgage.

Property is located in York County, Commonwealth of Pennsylvania, and has the address of 2225 Copenhaffer Rd, Dover, Pennsylvania 17315, along with the following legal description:

3ρ
4ν

SEE ATTACHED LEGAL DESCRIPTION
Parcel No. 23-000-NG-0110.00-00000
MIN No

Assignee certifies that the precise address of Flagstar Bank, FSB, is 5151 Corporate Drive, Troy, Michigan 48098-2639.

Attested by: _____

LINDSAY D. VULJEVIC
VICE PRESIDENT

TO HAVE AND TO HOLD, Assignee, its successors and assigns, subject only to the terms and conditions of the above-described Mortgage.

Book 2130 Page 506

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on

_____MAY 25 . 2011_____.

Mortgage Electronic Registration Systems, Inc., as
nominee for Flagstar Bank, FSB, its successors and
assigns

Signature: _____

**SHARON MORGAN**

Title: _____**VICE PRESIDENT**_____

Date: _____5 25-11_____

## FORM OF CORPORATE ACKNOWLEDGMENT

State of **MICHIGAN**
         **OAKLAND**                    ) SS:
County of          )

On this __25__ day of __may_____, 2011, before me the undersigned
officer, personally appeared _____**SHARON MORGAN**_____ who acknowledged himself or herself
to be the _____**VICE PRESIDENT**_____ of Mortgage Electronic Registration Systems, Inc., as nominee
for Flagstar Bank, FSB, its successors and assigns and that he or she as such
_____**VICE PRESIDENT**_____, being authorized to do so, executed the foregoing
instrument for the purposes therein contained by signing the name of the corporation by himself or
herself as _____**VICE PRESIDENT**_____.

In witness whereof, I here unto set my hand and official seal.

_____
NOTARY PUBLIC

**BELLA KHARSON**
Notary Public, State of Michigan
County of Oakland
My Commission Expires April 1, 2013

BEING ALL THAT CERTAIN TRACT OF LAND AND IMPROVEMENTS ERECTED THEREON SITUATE IN CONEWAGO TOWNSHIP, YORK COUNTY, PENNSYLVANIA, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT LANDS NOW OR FORMERLY OF JOHN E. SMITH AND A PUBLIC ROAD AT A STONE; THENCE ALONG SAID LAST MENTIONED LANDS, NORTH 27-5/8 DEGREES EAST A DISTANCE OF 10.1 PERCHES TO A STONE AT LANDS NOW OR FORMERLY OF FRANCES HAKE AND SAMUEL AUCHEY, THENCE ALONG SAID LAST MENTIONED LANDS, SOUTH 68-1/4 DEGREES EAST, A DISTANCE OF 17.84 PERCHES TO AN IRON PIN AT LANDS NOW OR FORMERLY OF HARRY PEREZ; THENCE ALONG SAID LANDS SOUTH 11-1/2 DEGREES WEST A DISTANCE OF 10.31 PERCHES TO STONES; THENCE ALONG LANDS OF THE SAME SOUTH 19-1/2 DEGREES WEST, A DISTNACE OF 13.1 PERCHES TO STONES AT LANDS NOW OR FORMERLY OF CHARLES HAKE; THENCE NORTH ALONG LANDS LAST MENTIONED, 37-1/8 DEGREES WEST A DISTANCE OF 25.12 PERCHES TO STONES AND THE PLACE OF BEGINNING.

THE IMPROVEMENTS THEREON BEING KNOWN AS 2225 COPENHAFFER ROAD, DOVER, PA 17315.

BEING the same premises which WESLEY M. KUNKEL, EXECUTOR OF THE ESTATE OF JOHN E. KUNKEL, AKA JOHN E. KUNKEL, SR. by Deed dated September 10, 2004, and recorded September 13, 2004, in the Recorder of Deeds Office in and for the City of Dover, County of York, Pennsylvania, in Book 1676, Page 5153, granted and conveyed unto WESLEY M. KUNKEL & KATHY ANN KUNKEL, HIS WIFE, in fee.

YORK COUNTY RECORDER OF DEEDS
28 EAST MARKET STREET
YORK, PA 17401

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*



Instrument Number - 2011027754
Recorded On 6/10/2011 At 10:13:13 AM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 941486
* Grantor - KUNKEL, WESLEY M
* Grantee - FLAGSTAR BANK FSB
User - MAG
* Customer - MCCABE WEISBERG & CONWAY

Book - 2130   Starting Page - 506
* Total Pages - 4

* Received By:  MAIL

PARCEL IDENTIFICATION NUMBER
23000NG01100000000
Total Parcels: 1

* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $52.00 |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

THIS IS A CERTIFICATION PAGE
## *PLEASE DO NOT DETACH*
THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2130**  Page: **509**

YORK COUNTY
ASSESSMENT OFFICE

1113527

Recording Requested By:
**Flagstar Bank, FSB**
Prepared By·
**Debora C. Cox**
**888-603-9011**
**450 E. Boundary St.**
**Chapin, SC 29036**
When recorded mail to:
**CoreLogic**
**450 E. Boundary St.**
**Attn: Release Dept.**
**Chapin, SC 29036**

Ref Number
Tax ID:
Property Address:
**2225 COPENHAFFER RD**
**DOVER, PA 17315-0000**
Property Location:
**Township of CONEWAGO**

This space for Recorder's use

# ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **5151 CORPORATE DRIVE, TROY, MI 48098** does hereby grant, sell, assign, transfer and convey unto **GREEN TREE SERVICING LLC** whose address is **7360 SOUTH KYRENE RD, T314, TEMPE, AZ 85283** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

| | |
|---|---|
| Beneficiary: | **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB., ITS SUCCESSORS AND ASSIGNS** |
| Mortgagor(s): | **WESLEY M KUNKEL AND KATHY ANN KUNKEL, HUSBAND AND WIFE AS TENANTS BY THE ENTIRETY** |

Date of Mortgage:   **7/25/2008**      Original Loan Amount:   **$107,000.00**

Recorded in **York** County, PA on: **8/21/2008**, book **1981**, page **7913** and instrument number **2008053654**

This Mortgage has not been assigned unless otherwise stated below:

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on **6/3/2014**

**FLAGSTAR BANK, FSB**

By: _____

**Debra Shealy, Vice President**

Book 2281 Page 3861

State of **SC**, County of **Lexington**

On this **03 day of June, 2014** before me personally appeared **Debra Shealy, Vice President** of **FLAGSTAR BANK, FSB** who provided satisfactory evidence of his/her identification to be the person whose name is subscribed to this instrument, and he/she acknowledged that he/she executed the foregoing instrument.

Notary Public: **James B. Krimm**
**Lexington County, South Carolina**
My Commission Expires: **12/1/2021**

JAMES B. KRIMM
Notary Public
State of South Carolina
My Commission Expires 12/1/2021

I hereby certify that the address of the within named assignee is:
**7360 SOUTH KYRENE RD, T314, TEMPE, AZ 85283**

**Signature**



*YORK COUNTY RECORDER OF DEEDS*
*28 EAST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

**Instrument Number - 2014022998**
Recorded On 6/13/2014 At 3:26:56 PM
* Instrument Type - ASSIGNMENT OF MORTGAGE
Invoice Number - 1098296
* Grantor - KUNKEL, WESLEY M
* Grantee - GREEN TREE SERVICING LLC
User - JMR
* Customer - CORELOGIC SOLUTIONS

**Book - 2281   Starting Page - 3861**
* Total Pages - 3

* Received By:  MAIL

PARCEL IDENTIFICATION NUMBER
23000NG01100000000
Total Parcels: 1

* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $23.50 |
| RECORDING FEES | $13.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $52.00 |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

THIS IS A CERTIFICATION PAGE
## PLEASE DO NOT DETACH
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2281**  Page: **3863**

When Recorded, Return to:
Ditech Financial LLC
Attn: Loss Mitigation
301 W. Bay Street
Jacksonville, FL 32202

CERTIFIED PROPERTY IDENTIFICATION NUMBERS
23000NG01100000000     CONEWAGO TP
YCGIS REGISTRY 12/09/2015 BY JV

This document was prepared Branka Fetahovic

*Brauh Stan*

301 W. Bay Street
Jacksonville, FL 32202

_____ [Space above This Line for Recording Data] _____

## HOME AFFORDABLE MODIFICATION AGREEMENT

### (Step Two of Two-Step Documentation Process)

Customer ("I"):[1] Wesley M. Kunkel and Kathy Ann Kunkel, Husband and Wife as Tenants by the Entirety

Lender ("Lender"): Ditech Financial LLC f/k/a Green Tree Servicing LLC

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 07/25/2008

Account Number

Property Address [and Legal Description if recordation is necessary] ("Property"):
2225 Copenhaffer Rd. Dover, PA, 17315

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Account Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Account Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.
APN#2~~3000N~~ 23000NG01100000000
See Attached Exhibit "A"

1. **My Representations**. I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Account Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. (i) I live in the Property as my principal residence, and the Property has not been condemned; or (ii) I lived in the Property as a principal residence immediately prior to my displacement, (iii) I intend to re-occupy the Property as a principal residence in the future, (iv) I do not own any single-family real estate other than the Property, and (v) the Property has not been condemned; or (vi) The certifications I have made concerning my intended use of the Property and the number

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

HAMP Agreement, 08/29/2014                                                          LTR-602

of single-family properties that I own continue to be true and correct on the date hereof, and the Property has not been condemned;

C.  There has been no change in the ownership of the Property since I signed the Account Documents;

D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program");

E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.  I have made or will make all payments required under a Trial Period Plan or Account Workout Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Agreement;

B.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Account Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Account Documents; and

C.  I understand that the Account Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Account Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Account Documents will automatically become modified on 12/01/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on 12/01/2015.

A.  The new Maturity Date will be 11/01/2055.

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Account. The new principal balance of my Note will be $163,163.78 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $44,200.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $118,963.78. Interest at the rate of 2.00000% will begin to accrue on the Interest Bearing Principal Balance as of 11/01/2015 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/01/2015. My payment schedule for the modified Account is as

Case 1:23-bk-01205-HWV   Doc 27-11   Filed 01/09/24   Entered 01/09/24 16:08:47   Desc  (loan documents)   Page 27 of 46

follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 5 | 2.000% | 11/01/2015 | $360.25 | $383.36, adjusts annually | $743.61, adjusts annually | 12/01/2015 | 60 |
| 6 | 3.000% | 11/01/2020 | $418.53 | adjusts annually | adjusts annually | 12/01/2020 | 12 |
| 7 - 40 | 3.875% | 11/01/2021 | $472.12 | adjusts annually | adjusts annually | 12/01/2021 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3 C. shall supersede any provisions to the contrary in the Account Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage Account, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Account will be the minimum payment that will be due each month for the remaining term of the Account. My modified Account will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D   I will be in default if I do not comply with the terms of the Account Documents, as modified by this Agreement.

E   If a default rate of interest is permitted under the Account Documents, then in the event of default under the Account Documents, as amended, the interest that will be due will be the rate set forth in Section 3 C.

F   I agree to pay in full the Deferred Principal and any other amounts still owed under the Account Documents by the earliest of  (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G   If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4   **Additional Agreements.**  I agree to the following:

A   That all persons who signed the Account Documents or their authorized representative(s) have signed this Agreement, unless (i) a customer or co-customer is deceased; (ii) the customer and co-customer are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non signing spouse may continue to be held liable for the obligation under the Account Documents), or (iii) the Lender has waived this requirement in writing.

B   That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Account Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the

amount of which may change periodically over the term of my Account.

D. **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Account Documents as amended by this Agreement, until the Account is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Account Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Account Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Account Documents, as the phrase "covenant and agreement" is used in the Account Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Account Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Account Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Account Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Account Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Account Documents, except as expressly modified by this

Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Account Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Account Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Account Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Account, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Account. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage account is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s) then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Account Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage account(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

M. I agree that if any document related to the Account Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the account as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a

demand on the original note. All documents the Lender requests of me under this Section 4 N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.   If my Account Documents govern a home equity account or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity Account or line of credit.   This means that I cannot obtain additional advances, and must make payments according to this Agreement.   (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity Account or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

O.   I acknowledge that this modification may have tax consequences for me. I understand that the Lender is required to report any debt forgiveness to the Internal Revenue Service, which may result in consequences regarding my federal, state or local tax liability. In addition, I understand that if I receive public assistance, the forgiveness of debt may affect my eligibility for these benefits. I acknowledge that the Lender cannot provide any advice or guidance regarding possible tax consequences or effect on any public assistance benefits. I further acknowledge that the Lender has advised that I may wish to consult with your tax professional about any possible tax consequences and/or the public assistance office regarding other consequences that may result from the forgiveness of debt.

In Witness Whereof, the Lender and I have executed this Agreement.

Account #: _____

Ditech Financial LLC
f/k/a Green Tree Servicing LLC

By: _____

Name: **James Browning**

Title: _____Assistant Vice President_____

NOV 3 0 2015
_____
Date

_____
Wesley M. Kunkel                    Customer

11 -18 - 2015
_____
Date

_____
Kathy Ann Kunkel                    Customer

11 - 18 - 2015
_____
Date

_____ [Space below This Line for Acknowledgement] _____

STATE OF _____PA_____

CITY/COUNTY OF _____YORK_____

I HEREBY CERTIFY that on this ___18 day of ___November___, 20_15_, before me, the subscriber, a Notary Public of the State of _____PA_____, in and for the jurisdiction aforesaid, personally appeared, Wesley M. Kunkel and Kathy Ann Kunkel, known to me of satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

_____
Notary Public Signature

Gregory L. Brenneman
Printed Name

Feb. 17 2018
My commission expires

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
GREGORY L. BRENNEMAN, Notary Public
West Manchester Twp., York County
My Commission Expires Feb. 17, 2018

HAMP Agreement, 08/29/2014

LTR-602

BEING ALL THAT CERTAIN TRACT OF LAND AND IMPROVEMENTS ERECTED THEREON SITUATE IN CONEWAGO TOWNSHIP, YORK COUNTY, PENNSYLVANIA, MORE PARTICULARLY BOUNDED AND DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT LANDS NOW OR FORMERLY OF JOHN E. SMITH AND A PUBLIC ROAD AT A STONE; THENCE ALONG SAID LAST MENTIONED LANDS, NORTH 27-5/8 DEGREES EAST A DISTANCE OF 10.1 PERCHES TO A STONE AT LANDS NOW OR FORMERLY OF FRANCES HAKE AND SAMUEL AUCHEY; THENCE ALONG SAID LAST MENTIONED LANDS, SOUTH 68-1/4 DEGREES EAST, A DISTANCE OF 17.84 PERCHES TO AN IRON PIN AT LANDS NOW OR FORMERLY OF HARRY PEREZ; THENCE ALONG SAID LANDS SOUTH 11-1/2 DEGREES WEST A DISTANCE OF 10.31 PERCHES TO STONES; THENCE ALONG LANDS OF THE SAME SOUTH 19-1/2 DEGREES WEST, A DISTNACE OF 13.1 PERCHES TO STONES AT LANDS NOW OR FORMERLY OF CHARLES HAKE; THENCE NORTH ALONG LANDS LAST MENTIONED, 37-1/8 DEGREES WEST A DISTANCE OF 25.12 PERCHES TO STONES AND THE PLACE OF BEGINNING.

THE IMPROVEMENTS THEREON BEING KNOWN AS 2225 COPENHAFFER ROAD, DOVER, PA 17315.

BEING the same premises which WESLEY M. KUNKEL, EXECUTOR OF THE ESTATE OF JOHN E. KUNKEL, AKA JOHN E. KUNKEL, SR. by Deed dated September 10, 2004, and recorded September 13, 2004, in the Recorder of Deeds Office in and for the City of Dover, County of York, Pennsylvania, in Book 1676, Page 5153, granted and conveyed unto WESLEY M. KUNKEL & KATHY ANN KUNKEL, HIS WIFE, in fee.

**(LENDER'S CORPORATE ACKNOWLEDGEMENT)**

State of **FLORIDA**

County of **DUVAL**

On <u>November 30 2015</u>, before me, <u>Leslie Tester</u>, personally appeared **James Browning, Assistant Vice President**, personally known to me **X** - OR - _____ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that <u>he</u>/she/they executed the same in <u>his</u>/her/their authorized capacity(ies), and that by <u>his</u>/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

_Jennifer Graves_
Witness

Jennifer Graves

_Julita Guerrero_
Witness

Julita Guerrero

WITNESS my hand and official seal.

_Leslie Tester_
Notary- **Leslie Tester**

LESLIE TESTER
Commission # EE 857016
Expires March 7, 2017
Bonded Thru Troy Fain Insurance 800-385-7019



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2015055427
Recorded On 12/9/2015 At 2:50:59 PM
\* Instrument Type - **MODIFICATION OF MORTGAGE**
Invoice Number - 1166676
\* Grantor - KUNKEL, WESLEY M
\* Grantee - DITECH FINANCIAL LLC
User - MAG
\* Customer - SIMPLIFILE LC E-RECORDING

Book - 2348   Starting Page - 8036
\* Total Pages - 10

\* Received By:

\* FEES

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| RECORDING FEES | $23.00 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $38.50 |

PARCEL IDENTIFICATION NUMBER
23000NG01100000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*

## PLEASE DO NOT DETACH

*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2348** Page: **8045**

**Prepared By:**
**D.Larose/NTC, 2100 Alt. 19 North,**
**Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Ditech Financial LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

```
CERTIFIED PROPERTY IDENTIFICATION NUMBERS
23000NG01100000000      CONEWAGO TP
YORIS REGISTRY 11/27/2017 BY JV
```

# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., TEMPE, AZ 85284, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD, STE 300, HIGHLANDS RANCH, CO 80129, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 07/25/2008, in the amount of $107,000.00 made by **WESLEY M. KUNKEL AND KATHY ANN KUNKEL** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS** recorded on 08/21/2008, in the Office of the Recorder of Deeds of **YORK** County, in the State of **Pennsylvania**, in **Book 1981 and Page 7913**.

Property is more commonly known as: 2225 COPENHAFFER RD TWP. OF CONEWAGO, DOVER, PA 17315-1839.

See Exhibit attached for Assignments, Modifications etc.

**Dated this 24th day of November in the year 2017**
**DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC**

By: _____

**FRANCIS DENARDO**

**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 DOCR

STATE OF FLORIDA   COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 24th day of November in the year 2017, by Francis DeNardo as VICE PRESIDENT of DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**CYNTHIA ALBANO**
**COMM EXPIRES: 08/01/2020**

CYNTHIA ALBANO
Notary Public - State of Florida
My Comm. Expires August 1, 2020
Commission # GG001222

Assignment of Mortgage from:
**DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 2100 E. ELLIOT RD., TEMPE, AZ 85284, (ASSIGNOR),**
to:
**SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD, STE 300, HIGHLANDS RANCH, CO 80129, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **WESLEY M. KUNKEL AND KATHY ANN KUNKEL**

All that certain lot or piece of ground situated in
Mortgage Premise: 2225 COPENHAFFER RD TWP. OF CONEWAGO
       DOVER, PA 17315-1839
       YORK
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Francis DeNardo**, do certify that the precise address of the within named Assignee is:
**SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD, STE 300, HIGHLANDS RANCH, CO 80129, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**FRANCIS DENARDO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

MERS PHONE 1-888-679-6377
MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI

Loan No:

'EXHIBIT A'

Assignments, Modifications, Consolidations Exhibit

Assignment: FLAGSTAR BANK, FSB TO GREEN TREE SERVICING LLC DATED 06-03-2014. REC: 06-13-2014 BK 2281 PG 3861



**YORK COUNTY RECORDER OF DEEDS**
**28 EAST MARKET STREET**
**YORK, PA 17401**

*Randi L. Reisinger - Recorder*
*Bradley G. Daugherty - Deputy*

Instrument Number - 2017054591
Recorded On 11/27/2017 At 11:20:24 AM
* Instrument Type - **ASSIGNMENT OF MORTGAGE**
Invoice Number - 1258165
* Grantor - KUNKEL, WESLEY M
* Grantee - SPECIALIZED LOAN SERVICING LLC
User - BGD
* Customer - SIMPLIFILE LC E-RECORDING

Book - 2449   Starting Page - 241
* Total Pages - 4

* Received By.

| * FEES | | PARCEL IDENTIFICATION NUMBER |
|---|---|---|
| STATE WRIT TAX | $0.50 | 23000NG01100000000 |
| JCS/ACCESS TO JUSTICE | $35.50 | Total Parcels: 1 |
| RECORDING FEES | $13.50 | |
| PIN NUMBER FEES | $10.00 | |
| COUNTY ARCHIVES FEE | $2.00 | |
| ROD ARCHIVES FEE | $3.00 | |
| TOTAL PAID | $64.50 | |

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

THIS IS A CERTIFICATION PAGE

## PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

Book: **2449** Page: **244**

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____  Space above for Recorder's use  _____
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **SPECIALIZED LOAN SERVICING LLC**, whose address is **6200 S QUEBEC ST, GREENWOOD VILLAGE, CO 80111**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST**, whose address is **888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **7/25/2008**
Original Loan Amount: **$107,000.00**
Executed by (Borrower(s)): **WESLEY M. KUNKEL & KATHY ANN KUNKEL**
Original Lender:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Book/Liber/Volume 1981, Page **7913**
Document/Instrument No: **2008053654** in the Recording District of **York, PA**, Recorded on **8/21/2008**.
**MUNICIPALITY: TOWNSHIP OF CONEWAGO**

Chain Exhibit:  SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2225 COPENHAFFER RD, DOVER, PENNSYLVANIA 17315-1839**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **5/4/2022**

**SPECIALIZED LOAN SERVICING LLC, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **KIMBERLY KELLY**
Title: **VICE PRESIDENT**

Witness Name **TRACY SCHMIDT**

I hereby certify the precise address of the within named **US BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST** (*Assignee*) is **888 7TH AVENUE 10TH FLOOR, NEW YORK, NY 10019.**

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of      **FLORIDA**
County of    **PINELLAS**

On **5/4/2022**, before me, **MONICA HASTEY-MCMAHON**, a Notary Public, personally appeared **KIMBERLY KELLY, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR SPECIALIZED LOAN SERVICING LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that KIMBERLY KELLY, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **MONICA HASTEY-MCMAHON**
My commission expires: **9/6/2025**

MONICA HASTEY-MCMAHON
Notary Public
State of Florida
Comm# HH172753
Expires 9/6/2025

**EXHIBIT "A"**
**Assignment Chain**

Assigned From:        DITECH FINANCIAL LLC F/K/A GREEN TREE SERVICING LLC

To:        SPECIALIZED LOAN SERVICING, LLC

AOM Recording Details:        Recorded 11/27/2017; Book: 2449; Page: 241; Instrument: 2017054591



## YORK COUNTY RECORDER OF DEEDS
## 28 EAST MARKET STREET
## YORK, PA 17401

*Laura Shue - Recorder*
*Tina M. Channell - Deputy*

**Instrument Number - 2022026471**          **Book - 2728   Starting Page - 1275**
**Recorded On 5/12/2022 At 3:59:14 PM**          **\* Total Pages - 4**
**\* Instrument Type - ASSIGNMENT OF MORTGAGE**
**Invoice Number - 1494137**
**\* Grantor - SPECIALIZED LOAN SERVICING LLC**
**\* Grantee - US BANK TRUST NATIONAL ASSOCIATION**
**User -  TMC**          **\* Received By:  ERECORD**
**\* Customer - MERIDIAN ASSET SERVICES - API**

**\* FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $40.25 |
| RECORDING FEES | $13.50 |
| PIN NUMBER FEES | $10.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL PAID | $69.25 |

| York County UPI Certification |
|---|
| On May 12, 2022 By JV |

PARCEL IDENTIFICATION NUMBER
23000NG01100000000
Total Parcels: 1

I Certify This Document To Be
Recorded In York County, Pa.



Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*

# <u>PLEASE DO NOT DETACH</u>
*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

**\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.**

Prepared by:
NewRez LLC
d/b/a Shellpoint Mortgage Servicing
75 Beattie Place, Suite 300
Greenville, SC 29601

2021088520

3 Pgs

P/ATTY    Book: DE 2635 Page: 2346 - 2348
September 14, 2021  02:42:18 PM
Rec: $25.00
E-FILED IN GREENVILLE COUNTY, SC

RECORDING REQUESTED BY
& AFTER RECORDING RETURN TO:
NewRez LLC
d/b/a Shellpoint Mortgage Servicing
75 Beattie Place, Suite 300
Greenville, SC 29601

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust, a Delaware Statutory Trust formed and existing under the laws of the State of Delaware and having its principal place of business at 888 7th Avenue 10th Floor, New York, NY 10106, as Owner ("Owner") pursuant to the Servicing Agreement between Owner and NewRez LLC d/b/a Shellpoint Mortgage Servicing, having an office at 75 Beattie Place, Suite 300, Greenville, South Carolina 29601, dated as of February 22, 2021 (as amended, supplemented or restated from time to time, the "Agreement"), hereby constitutes and appoints NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Servicer") , by and through the Servicer's authorized officers, as the Owner's true and lawful attorney-in-fact (the "Attorney-in-Fact"), in Owner's name, place and stead and for the Owner's benefit, in connection with all mortgage loans and REO properties subject to the terms of the Agreement for the purpose of performing the acts and executing the documents described herein in the name of the Owner as may be customarily and reasonably necessary and appropriate in respect of any of the mortgages, deeds of trust, deeds to secure debt, and other forms of security instruments (the "Security Instruments") and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is the Owner (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Security Instrument) and for which the Servicer is performing servicing activities all subject to the terms of the Agreement.

This appointment shall apply only to the following enumerated transactions with respect to the Security Instruments, Mortgage Notes, and related real property:

1.      To execute, acknowledge, seal and deliver any and all documents, deeds, transfers, tax declarations, certificates, assignments, allonges, modifications, affidavits, subordinations, endorsements, short sales, and any other documents or instruments whatsoever which are necessary, appropriate, or required to transfer, sell, or convey real property, to correct or clear title to the related real property, and to negotiate, approve and accept funds for the short sales of real property.

2.      To initiate and take such actions, and to execute, acknowledge, seal and deliver any and all documents or instruments whatsoever, which are necessary, appropriate, or required, in

connection with the foreclosure or acceptance of a deed in lieu of foreclosure (including without limitation the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure), insurance filings and claims, bankruptcy and eviction actions, real estate transactions, and the pursuit of any deficiency, debt or other obligation.

3.     To execute, acknowledge, seal and deliver any and all assignments, releases, short sales, satisfactions and partial releases.

4.     To execute, acknowledge, seal and deliver any and all documents associated with the disposition or transfer of real property, including deeds to convey title from Owner to the Attorney-in-Fact and other deed transfers without limitation.

5.     To execute, acknowledge, seal and deliver any and all documents associated with subordinations, partial releases, partial re-conveyances, assignments, release of lien (including settlements and short sales), lot line adjustments, and all documents associated with lien releases.

6.     To endorse any checks or other instruments received by the Servicer and made payable to Owner.

7.     The take such actions as may be necessary for the preservation or repair of the related real property.

This Power of Attorney shall be effective commencing on the date written below and shall remain in full force and effect until such time that the Attorney-in-Fact no longer services the Mortgage Loans, unless earlier revoked by written instrument. Owner hereby ratifies, confirms and approves in all respects the actions heretofore taken by the Attorney-in-Fact which are consistent with the authorizations detailed hereinabove. Owner has the unrestricted right unilaterally to revoke this Power of Attorney. The Owner authorizes the Servicer, by and through the Servicer's authorized officers, to certify, deliver and/or record copies and originals of this Power of Attorney.

Servicer shall indemnify the Owner, its successors and assigns and hold them harmless against any and all claims, losses, penalties, fines, forfeitures, legal fees and related costs, judgments and any other costs, fees and expenses arising out of or resulting from any misuse or unlawful use of this Power of Attorney by Servicer or any of its agents, designees or representatives.

Third parties without actual notice may rely upon the exercise of the power granted under this Power of Attorney. Any third party may rely upon a copy of this Power of Attorney, to the same extent as if it were an original and shall be entitled to rely on a writing signed by the Servicer to establish conclusively the identity of a particular right, power, capacity, asset, liability, obligation, property, loan or commitment of Servicer for all purposes of this Power of Attorney.

*[Remainder of this page intentionally left blank.]*

Limited Power of Attorney – Page 2                                                                 Shellpoint

Case 1:23-bk-01205-HWV    Doc 27-11    Filed 01/09/24    Entered 01/09/24 16:08:47
Desc (loan documents)    Page 45 of 46    2021088520 DE BK 2635 PG 2347

Dated: ~~August 31, 2021~~
September 8, 2021

US Bank Trust National Association, Not In
Its Individual Capacity But Solely As Owner
Trustee For VRMTG Asset Trust

By: _____

Name: Wenyi ("Vivien") Huang

Title: Authorized Person

Witnesses:

_____

Name: Giovanni Cipriano

_____

Name: Amit Paliwal

## ACKNOWLEDGMENT

STATE OF <u>New York</u>

             ss.:

COUNTY OF <u>New York</u>

    On this __ day of September, 2021, before me, the undersigned, a Notary Public in and for said State, personally appeared <u>Wenyi Huang, Chief Investment Officer</u> of <u>US Bank Trust National Association, Not In Its Individual Capacity But Solely As Owner Trustee For VRMTG Asset Trust</u>, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he or she executed the same in his or her authorized capacity, and that by his or her signature on the instrument the entity, on behalf of which the person acted, executed the instrument.

(Seal)

_____
Notary Public

LAI MAY LEE
Notary Public - State of New York
No. 01LE6397482
Qualified in New York County
My Commission Expires 09/03/2023